# HEYDE, Respondent, v. ST. LOUIS TRANSIT COM-PANY, Appellant.

### St. Louis Court of Appeals, November 17, 1903.

I. **Carrier of Passengers:** DERAILMENT OF CAR: PERSONAL INJURY: INSTRUCTIONS. Plaintiff alleged that while defendant's car, on which she was a passenger, was at or near the intersection of certain streets, defendant's servants, agents and employees negligently caused and suffered said car to leave its track and collide with another of defendant's cars; there was evidence of the condition of the track and switch at place of accident and that cars often left the track and ran on the switch at that point, and defendant introduced evidence to show that such accidents could be prevented by locking the switch. *Held,* an instruction allowing the jury to find for plaintiff, if defendant's employees in charge of its tracks and switches could have prevented the accident by high care, did not frame issues outside the evidence.

2. ———: ———: UNAVOIDABLE ACCIDENT. Plaintiff should not be nonsuited for the reason that the derailment of the car was unavoidable, where there is evidence that cars frequently jumped the track at that point, the motorman testifying that the car was not apt to leave the track if everything was in good condition and defendant's master-mechanic testifying that accidents of this kind might be prevented by locking the switch, it taking only a half-minute or a minute to lock same, plaintiff being free from negligence herself.

3. ———: ———: HIGHEST DEGREE OF CARE. Defendant's employees in control of the car on which plaintiff was a passenger, or of the tracks on which said car was running, are bound to exercise the high degree of care and skill which careful and practical railroad operatives would exercise under similar circumstances.

4. ———: ———: BURDEN OF PROOF. After plaintiff had proven she was a passenger and guiltless of any want of care on her part, and that she was injured by derailment and collision, the burden fell on defendant to exculpate itself from carelessness.

5. ———: ———: DAMAGES NOT EXCESSIVE. A verdict of $2,000 for plaintiff *held* not excessive, where there was evidence of permanent injury to plaintiff's nervous system and to her shoulder,

that she was very feeble, had no use of her arm, was afflicted with dizziness, had sick spells, was unable to do the work she formerly did, had palpitation of the heart, and partial paralysis of her arm and hand.

Appeal from St. Louis City Circuit Court.—*Hon. J. A. McDonald*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Crawley, Jamison & Collett* for appellant.

(1) The refusal of defendant's peremptory instruction asked at the close of all the evidence was error. Fuchs v. St. Louis, 167 Mo. 620; Feary v. Railroad, 162 Mo. 102; Amer. Brewing Ass'n v. Talbot, 141 Mo. 684; O'Malley v. Railroad, 113 Mo. 319; Sawyer v. Railroad, 37 Mo. 241; Young v. Railroad, 93 Mo. App. 275; Holt v. Railroad, 84 Mo. App. 443; Bishop's Non-Contract Law, sec. 1103. (2) Instructions which undertake to define the duty of the carrier should in terms limit their requirement to such foresight and such care as was practicable under the circumstances. Furnish v. Railroad, 102 Mo. 451; Freeman v. Railroad, 95 Mo. App. 99.

*M. Tucker* for respondent.

(1) If, upon the trial, the plaintiff proves that she was a passenger on the car, that a collision or derailment took place, and that she was injured thereby, the burden of proof is then cast upon the appellant of relieving itself from responsibility by showing that the injury was the result of an accident which the utmost skill, foresight and diligence could not have prevented. Lemon v. Chanslor, 68 Mo. 355; Hipsley v. Railroad, 88 Mo. 352; Furnish v. Railroad, 102 Mo. 438; Clark v. Railroad, 127 Mo. 208; Ock v. Railroad, 130 Mo. 51. (2) The degree of care incumbent upon a common carrier of pas-

sengers is expressed as being the highest degree of care in the following cases: O'Connell v. Railroad, 106 Mo. 482; Waller v. Railroad, 83 Mo. 608; Jackson v. Railroad, 118 Mo. 254; Smith v. Railroad, 108 Mo. 243. (3) The verdict is not excessive. Perrett v. Kansas City, 162 Mo. 252; Hollenbeck v. Railroad, 141 Mo. 99; Barr v. Kansas City, 121 Mo. 32; Griffith v. Railroad, 98 Mo. 168.

GOODE, J.—On July 12, 1902, respondent took passage on one of the appellant's street cars at Twelfth and Lami streets in the city of St. Louis, to be carried to the corner of Grand and Franklin avenues. When the car was running on Cherokee street near its intersection with California avenue, it stopped close to a switch on which was standing a Bellefontaine car. In a moment or two the car plaintiff was in started again. Its front end passed the switch and the Bellefontaine car safely, but the rear trucks left the main track, ran on the switch, collided with the Bellefontaine car and hurt the plaintiff. This action was brought to recover for the injury.

The charge of negligence is that "whilst the said car (that is, the one plaintiff was on) was at or near the intersection of Cherokee and California avenues in the city of St. Louis, defendant's servants, agents and employees, carelessly and negligently caused and suffered said car to leave its track and collide with another of said defendant's cars." On this averment of the petition it is contended the plaintiff was limited, in making out a case, to the negligence of the servants of the Transit Company who were in charge of the car, and that the court erred in giving an instruction (again referred to below) allowing the jury to find for the plaintiff if employees of the defendant in charge of its tracks and switches, could have prevented the accident by high care. The reasoning is that the averment states the negligence to have occurred whilst the car was at the intersection

of the two streets and that no servants of the company could have been guilty, at that instant, of negligence which caused the plaintiff's injury, except the car crew. Evidence in regard to the condition of the track and switch at the place of the accident went in without objection; evidence, too, that cars often left the track and ran on the switch at that point. Indeed, the latter fact was elicited by the defendant's counsel in his cross-examination of plaintiff's witness Rayner. Defendant put in testimony to show such accidents could be prevented by locking the switch. The instructions given did not frame issues outside the evidence.

Another point pressed on our attention is that on the whole evidence plaintiff should have been nonsuited, because it was conclusively shown that the accident was one which could not have been forseen, and, hence, could not have been prevented; that the testimony shows inspections of the track were made at regular intervals and that within the thirty-six hours preceding the collision the tracks were inspected at the point where it occurred and found to be in good condition. All the evidence does not warrant those statements. Charles Rayner, whose place of business had been at the southwest corner of Cherokee street and California avenue for two years, witnessed the accident. He swore cars frequently jumped the track at that point; did so every week; sometimes the front end of the car would leave the rails, and sometimes the rear end, as happened in this instance; that he had witnessed the same occurrence within two weeks.

The motorman of the car in question swore a car was not apt to leave the track if everything was in good condition; while Otto Schmidt, general master mechanic of the Transit Company, testified that accidents of this kind might be prevented by putting a key or wedge in the switch and locking it; that it would take from a half minute to a minute to lock it. Of course, we do not decide as a matter of law that appellant had to lock the

switch; but merely that the foregoing evidence, taken as a whole, precluded a nonsuit. No conclusion that this accident was unavoidable by carefulness was to be drawn by the court, with such testimony before it; the question fell to the jury for decision. Respondent was undoubtedly free from negligence herself, as she was sitting quietly in the car as a passenger. The collision, therefore, made a prima facie case for her. Lemon v. Chanslor, 68 Mo. 341; Hipsley v. Railroad, 88 Mo. 348; Furnish v. Railroad, 102 Mo. 438; Clark v. Railroad, 127 Mo. 197; Ock v. Railroad, 130 Mo. 27; Olsen v. Railroad, 152 Mo. 426. We think the defendant fell short of overcoming this prima facie case so thoroughly as would have justified the circuit court in directing a nonsuit.

The court gave an instruction that if the jury found the agents, servants and employees of the defendant in control of the car on which plaintiff was a passenger, or of the track on which said car was running, or the switch at the place where the derailment occurred, and could have prevented said derailment and collision by the exercise of the very high degree of care and foresight of skillful, careful and practical railroad operatives under the same or similar circumstances; then the plaintiff was entitled to recover. That instruction states the law with reference to the care defendant was bound to exercise to prevent an injury to the plaintiff, and is couched in approved language. Furnish v. Railroad, 102 Mo. 438; O'Connell v. Railroad, 106 Mo. 482; Wilmott v. Railroad, 106 Mo. 535; Jackson v. Railroad, 118 Mo. 199; Hite v. Railroad, 130 Mo. 132; Sullivan v. Railroad, 133 Mo. 1; Feary v. Railroad, 162 Mo. l. c. 100; Parker v. Railroad, 69 Mo. App. 54; Freeman v. Railroad, 95 Mo. App. l. c. 99.

As said above, after plaintiff had proven she was a passenger and herself guiltless of any want of care, and that she was injured by the derailment and collision, the burden fell on the defendant to exculpate itself from

carelessness.    Decisions we have cited above uphold that doctrine as the law in Missouri; as it is elsewhere.

The verdict, which was for two thousand dollars, is attacked as excessive. We think that sum was not unwarranted by the evidence. Plaintiff's physician swore the injury to her nervous system was getting worse all the time and would be permanent; further, that the injury to her shoulder was permanent.    There was testimony that plaintiff is very feeble, has no use of her arm, is afflicted with dizziness, has sick spells, is compelled to lie in bed days at a time and is unable to do any work she formerly did.    She swore she had dizzy spells, pain in her arm, palpitation of the heart and partial paralysis of her arm and hand; that before the injury she did the housework, but was unable to do it now.    Certainly this verdict is not so inordinate that we ought to denounce it.

There was ample evidence to show plaintiff incurred expense for medical treatment and would likely incur future expense of that sort.

The accident was of a kind which casts no doubt on the merits of this action, but leaves the mind perfectly clear that the plaintiff was seriously hurt while she was free from fault and that the defendant was to blame. The case seems to have been fairly tried and the judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.