H. D. GOODWIN, RESPONDENT, v. MAXWELL COSTELLO AND SAM ARELLO, APPELLANTS.—212 S. W. 2d 804.

Kansas City Court of Appeals. Opinion delivered May 24, 1948.

*George M. Hare* and *Charles V. Garnett* for appellants.

658

*Guy W. Runnion, Wm. Dennis Bush* and *C. W. Prince* for respondent.

CAVE, P. J.—This is an appeal from the order of the trial court overruling defendants' motion to quash an execution. The judgment upon which the execution is based was entered April 23, 1946, upon plaintiff's (Goodwin's) complaint in unlawful detainer. The judgment awards plaintiff possession of premises, which will be referred to as the "liquor store", being a part of a 16-acre tract of land in Jackson County; and awards plaintiff a money judgment for $780, rents accrued, plus $2.00 double damages, plus $80 per month for double rents from the above date until *restitution* be made, with costs. That judgment was later affirmed by this court in Goodwin v. Holland et al., 200 S. W. (2d) 588.

The execution recites that the judgment was rendered against Maxwell Costello and Sam Arello for the sum of $780, plus $2.00, and

also $80 a month for rents and profits from the 23rd of April, 1946, *until restitution* be made, and directs the sheriff to cause to be made the sum aforesaid to satisfy the judgment, interest and costs.

The motion to quash the execution pleads that defendants are not now, and have not been, in possession of the premises described in the judgment since the date of its rendition; alleges that the whole amount due plaintiff is $782, plus interest and costs, and tenders that amount. The motion also alleges that because the execution is for a greater amount than the amount actually due, it is irregular and void, and prays that the execution be quashed upon the payment to plaintiff, or into court for benefit of plaintiff, the sum of $782, plus interest and costs. The tender made by defendants was declined.

To support the allegation of the defendants that they were not then, and had not been, in possession of the premises since the date of the judgment of the unlawful detainer suit (April 23, 1946), they offered in evidence, without objection, a petition filed in Division 4 of the Circuit Court in Kansas City by Marie Costello against plaintiff, Goodwin, and the sheriff of Jackson County, seeking to enjoin them from interfering with her right to possession of the ''liquor store'' under any writ of restitution issued, or to be issued, on the unlawful detainer judgment. The injunction petition alleges that Marie Costello (plaintiff therein) is the owner of an estate by the entirety in and to an undivided one-half interest in the 16-acre tract which is improved by a tavern building, a smaller building, known as the *retail liquor store*, and other improvements; that the other half interest in said tract is owned by Grace Dodds; that she and Mrs. Dodds are cotenants; that Goodwin, claiming to be the lessee of Mrs. Dodds of the entire 16-acre tract, has obtained a judgment in unlawful detainer against Mike Holland, Maxwell Costello and Sam Arello, awarding Goodwin possession of the ''liquor store''; that Marie Costello was never a party to the unlawful detainer action; that neither of the Costellos ever authorized their cotenant, Dodds, to enter into any contract with Goodwin, and that Marie Costello had never consented to or ratified any such lease contract; that Marie Costello is and always has been in the actual possession of the ''liquor store'', and that Goodwin has not been, and is not entitled to, the possession thereof. The prayer of the petition is that Goodwin and the sheriff be permanently enjoined from interfering with Marie Costello's right to possession of the ''liquor store'' under any writ of restitution issued or to be issued in the unlawful detainer action.

Goodwin filed an answer in the injunction suit and, among other things, admitted that Marie Costello ''has been and is now in the actual possession'' of the ''liquor store'', but denies that she has a lawful right to the possession.

Upon a trial of that suit, the court found that the allegations of Marie Costello's petition were true; that she is the owner of an estate

by the entirety in an undivided one-half interest in and to the "liquor store" and the 16-acre tract; "that the *right* of plaintiff (Marie Costello) *to the possession* of said retail liquor store is superior to any right or claim of right ·to the possession by the defendant, H. O. Goodwin, * * * ''. (Italics ours) This judgment was entered November 29, 1946. Goodwin and the sheriff appealed and the judgment was affirmed by this court at this term, but not yet published (our case No. 20945).

Neither of .the defendants (Maxwell Costello and Sam Arello) testified at the hearing on their motion to quash the execution. However, they called Marie Costello as a witness, who testified that she was not a party to the unlawful detainer suit, that she brought the injunction suit as plaintiff, and that she is in possession of the property known as the "liquor store"; that she owns and operates that business herself and has been in possession of that property at all times since April 23, 1946, and was in possession long before that time, to-wit, from and after August 4, 1939; that she and her husband, Maxwell Costello, had been partners in the business, but that he had given her his interest therein; that for the past 4 years, except for a few months, he has been physically incapacitated and has been in a sanitarium at Tucson, Arizona; that Sam Arello is not in possession of it, but just works for her as an employee on a salary basis; that she never paid rent on the property to Goodwin, and her husband never paid any rent to him; that she never did authorize anyone to pay rent and did not know that Sam Arello paid any rent to Goodwin; that when she was in Arizona with her husband, Arello conducted and managed the business as her employee.

Defendants contend that the execution should be quashed because it authorizes the sheriff to levy upon their goods to collect $80 per month as double rent from the date of the judgment in the unlawful detainer suit "until restitution be made"; and that the evidence introduced at the hearing on their motion proved conclusively that they have not been in possession of the property since the date of the unlawful detainer judgment, and that they cannot make restitution to Goodwin because of the judgment in the injunction suit above referred to.

We should examine the status of Goodwin and Mrs. Costello concerning this property. It is conceded that Mrs. Dodds and Mr. and Mrs. Costello were tenants in common in all of the 16-acre tract and the improvements thereon. Mrs. Dodds, by a written instrument, leased the entire tract to Goodwin for a period of 5 years, but neither Mrs. Costello nor her husband signed that lease or authorized Mrs. Dodds to do so on their behalf, or ratified her action. These facts are definitely settled by the judgment in the injunction suit brought by Mrs. Costello. The judgment in the unlawful detainer suit definitely settled- the proposition that Goodwin sublet the "liquor store"

to defendants, Mr. Costello and Arello, and that they had been in possession thereof as his tenants. But Mrs. Costello contends that she was not bound by the lease made by Mrs. Dodds to Goodwin or by the judgment in the unlawful detainer suit against Mr. Costello and Arello, and that her right to possession of the property was unimpaired and unaffected by the Dodds lease or by the judgment of the unlawful detainer suit.

It is the well settled law that a single cotenant has no power to lease the entire estate, or any specific portion thereof, to the exclusion of his cotenant, unless he is duly authorized to do so by the other cotenants. And if one of the cotenants should purport to make an unauthorized lease of this kind, it is in no way binding upon the other owners, and they may regard the lessee as a mere trespasser, *so far as his claim to the entire property is concerned.* But it does not follow, because a lease made by only one of the cotenants is not binding upon the others, that it is of no effect as between the lessor and lessee; on the contrary, as between them, it is just as valid as a lease of property owned entirely by the lessor. It operates to transfer to the lessee for the term of the lease the possession and right in the property held by the lessor, and thereby makes the lessee a tenant in common with the other owners. 14. Am. Jur., Sec. 87, pp. 153, 154. See, also, Kansas City Southern Rwy. Co. v. Sandlin, 158 S. W. 857; City of St. Louis v. Laclede Gas Light Co., 96 Mo. 197, 198; Morriss v. Finkelstein, 145 S. W. (2d) 439, 444; Benoist v. Rothschild, 145 Mo. 399. In the last cited case, at pages 408-9, the court quoted with approval this principle of law. "A cotenant may convey at his pleasure his undivided interest in all the lands held in common without the knowledge or consent of his companions in interest. In this case the effect of the deed is to place the grantee in the deed in the same position that the grantor had previously occupied. * * * Whatever the deed may profess to dispose of, the grantee, as between himself and the other cotenants, can obtain no greater interest than his grantor had the right to enjoy." In Kansas City Southern Rwy. Co. v. Sandlin, supra, it is said (857-8): "It is hardly questioned but that, if plaintiff is the owner in fee of an undivided one-half of said strip of land, then defendants' lease from the other tenant in common, though valid as between the parties thereto, is void as to this plaintiff. The lessee of one tenant in common has no right to mine and take mineral ores from a tract of land against the will and without the consent of the other cotenant." (Citing many cases). It is also the law that if one tenant in common denies the right of possession to his cotenant, then such cotenant can maintain an action in ejectment to establish and secure his right of possession and may recover damages and rent for the denial thereof by the cotenant in possession. Falconer v. Roberts, 88 Mo. 574.

It seems clear that Mrs. Costello, by virtue of being a cotenant, had a right to the joint possession of the 16-acre tract with her cotenant, Mrs. Dodds, and with Mrs. Dodd's lessee, Goodwin, but she did not have the *exclusive* right of possession to any particular portion of the land *merely because she was a cotenant*. Falconer v. Roberts, supra (579).

The judgment in the injunction suit did not find and decree that Mrs. Costello *had been* in the *exclusive* possession of the "liquor store" prior or subsequent to the judgment in the unlawful detainer suit. All it decreed was that her *right* to the possession of the "liquor store" was superior to any right or claim of right to the possession thereof by Goodwin, and enjoined him and the sheriff from interfering with her *right of possession*. In her brief filed in this court on the appeal from the judgment in the injunction suit, she states her position in this language. "The decree appealed from (injunction suit) only enjoins him (Goodwin) from interfering with her right of possession by the issuance of a writ of restitution upon the judgment in the unlawful detainer action, to which she was not a party, and by which she is not bound. In all respects Goodwin is perfectly free to obtain process to carry into execution the judgment he has obtained in the unlawful detainer action against the defendants therein named. * * * He can proceed either against Max Costello or Sam Arello by execution to collect his money judgment for rent, * * *. But he cannot have a writ, or enforce it, against one who was not a party and against whom a judgment has not been rendered and who has not been accorded a day in court. * * * The case at bar (injunction) was not one which sought to interfere in the slightest degree in any judgment against the defendants in the unlawful detainer suit, but was only for the purpose of preventing the execution of that judgment in such manner as to interfere with Marie Costello's right of possession of her property. The execution sought to be quashed seeks to collect a money judgment only and does not attempt restitution of the property to Goodwin. Our opinion in affirming the judgment in the injunction suit is based on that theory. The effect of the judgment in the injunction suit, from and after the date thereof, was to deny to Goodwin his right to the possession of the interest of Marie Costello in and to the 16-acre tract, including the "liquor store." He alone was not entitled to collect double rent after the date of that judgment, regardless of who was in actual possession of the property, because he had no *exclusive* right to possession of the premises. This principle is strongly hinted at in Kelly v. Clancy, 15 Mo. App. 519, 528. It follows that the judgment in the injunction suit did not conclusively establish the fact that Mr. Costello and Arello were prevented thereby from surrendering *their* possession to *their* landlord (Goodwin).

Was there other evidence proving that they *made actual restitution*? The only testimony on this branch of the case was given by Mrs.

Costello. She testified that she had been in possession of the "liquor store" since August 4, 1939, when she first acquired an interest in the 16-acre tract. But this evidence cannot aid these two defendants because the judgment in the unlawful detainer suit settled that issue, so far as they are concerned, and determined that *they* were in possession and unlawfully withholding the property from Goodwin at the time of that judgment. *They* can no longer dispute or litigate that question. Mrs. Costello also testified that she and her husband had been partners in the business until 1943, but that he gave her his interest in the "liquor store" when he was compelled to go to Arizona because of ill health; that she remained in possession of the "liquor store" after that time, and that Arello, who has been in the store all along, was merely her employee on a salary basis, and that when she was in Arizona with her husband, Arello managed and conducted the business for her as her employee. However, at the trial of the unlawful detainer suit, which was held in the same court and before the same judge who heard the evidence on the motion to quash the execution, Arello testified that since July 1, 1943, he and Max Costello had been partners in the "liquor store" business and that he had paid the monthly rents to Goodwin from the assets of that business. Furthermore, the record in the unlawful detainer suit discloses that these two defendants made no contention or defense that Marie Costello had any interest in the "liquor store" or any right to the possession thereof. Their sole defense and contention was that Goodwin had sublet the "liquor store" to Maxwell Costello *so long as he might live*. See our opinion in Goodwin v. Holland et al., supra. While the motion to quash the execution is in the nature of an independent action, nevertheless it grows out of the judgment and proceedings in the unlawful detainer suit and is in aid of the process of that court in executing that judgment, and he can take judicial notice of what his records show in that case, and we can assume that he did so. Thompson et al. v. Scott et al., 19 S. W. (2d) (Mo.), 1063. In our opinion in Goodwin v. Holland et al., supra, we gave consideration to such facts and rendered a decision thereon. Under such circumstances the trial court was justified in holding, in effect, that Max Costello and Arello had not *surrendered possession* of the "liquor store" to their landlord, Goodwin, prior to the judgment in the injunction suit.

The judgment in the unlawful detainer suit follows the statute and gives the plaintiff double the rental value until restitution is made by the defendants. The execution issued follows the judgment. This is correct. The only way defendants can purge themselves of liability for double rent after the judgment is to make *restitution* or prove a *circumstance* has arisen making restitution by them impossible. Kelly v. Clancy, supra, (531).

It follows, from what we have said, that Goodwin is entitled to collect the amount of the judgment at the time it was rendered, plus interest, and plus $80 per month until the date of the judgment in the injunction suit, November 29, 1946; but that he is not entitled to collect rent thereafter because his *exclusive right of possession* has been permanently denied.

The order overruling the motion to quash execution is affirmed; but the sheriff is authorized to collect $80 per month rental only from April 23, 1946, to November 29, 1946, together with the other amounts specified in the execution. All concur.